We'll move on to our next case of the day, certainly the most unusual name of the day, Animal Legal Defense Fund v. Special Memories Zoo. We'll hear first from Mr. Kirkpatrick. Thank you, Your Honors, and may it please the Court. My name is Michael Kirkpatrick, and I represent the Plaintiff Appellant Animal Legal Defense Fund. The primary issue in this case is whether the district court erred in denying an award of attorney's fees to a prevailing plaintiff in a case brought under the Endangered Species Act. Mr. Kirkpatrick, can you point to where in the record the district court articulated the wrong legal standard? I cannot, Your Honor. So what's the standard of review? Okay, the standard of review is abuse of discretion, but because we assert that the four reasons given by the district court are errors of law, in that they do not constitute special circumstances that would render an award of attorney's fees unjust, it essentially becomes de novo. As Your Honor wrote in the Vega decision, yes, abuse of discretion. It doesn't matter who wrote which opinion of the court. Okay, but whether it's an abuse of discretion, if it's a legal error, that is always going to be an abuse of discretion. So we're essentially arguing for de novo review with regard to the four special circumstances. And that's what I wanted to focus on was each of those four reasons, none of them have ever been recognized by this court as a special circumstance that would render an award of attorney's fees unjust. First, the district court speculated that the outcome of the case might have been different if defendant had made different strategic litigation choices. But we're aware of no decision from any court holding that that's a special circumstance, and for good reason. If courts had to determine whether the case might have come out differently if different issues had been raised and briefed and argued, it would turn the fee determination into a new litigation, which the Supreme Court has admonished us not to do. And secondly, it would be unfair to deny fees to the Animal Legal Defense Fund based on issues it never had a chance to brief, argue, or appeal from. And especially with regard to mootness, I just want to note that defendant did file a motion to dismiss this case as moot. And seven months into the litigation, the district court denied it, saying that they had not shown mootness, because although they had put in declarations asserting that they had no ownership interest in the facilities to which the animals had been transferred, they had only asserted that they had no current possessory interest in the animals. So there was a question about whether they retained any sort of title or ownership in the animals. So because they had not proven that, the district court said, motion to dismiss for mootness is denied. We're going to go back and do some discovery on those issues. And it was then about six weeks later that they decided, defendants, decided they did not want to continue in the case. They acquiesced in the entry of a default judgment. And of course, a default judgment, it has consequences. It means that the well-pleaded allegations of the complaint are taken as truth. The second reason for denying fees was the district court questioned whether ALDF's lawsuit had catalyzed the transfer of the protected animals. But causation is irrelevant here, because ALDF is a prevailing party within the meaning of Buchanan. It would only, causation would only be something we would need to discuss if we were proceeding under the catalyst theory, which we're not. Is the catalyst theory available under the Endangered Species Act? It absolutely is, Your Honor. This court has not so held, but the three appellate courts that have addressed that issue, the 11th, the 9th, and blanking on the other one, they have said so. And the loggerhead turtle decision, it's the D.C. Circuit, is the third. The loggerhead turtle decision out of the 11th Circuit lays that out. So the catalyst theory does survive, but we don't actually need it here because we're a prevailing party. Now the third and fourth reasons given by the district court are reasons that this court has specifically rejected and said do not constitute special circumstances. The third reason given was the defendant's ability to pay. The district court expressed some concern over saddling with the defendants with the burden of a fee award. And it relied on an 8th Circuit decision, Kuehl v. Selner, as its authority for that. But this court, in Lennard v. Argento and in Entertainment Concepts v. Masajewski, has specifically held that a defendant's ability to pay is not a special circumstance that would render an award of attorney's fees unjust. And here, of course, there is no evidence of the record about defendant's ability to pay. In fact, the property where the zoo was located and the zoo equipment indicates that they probably do have some ability to pay, although there's no specific figures in the record. The fourth reason the district court gave was that ALDF is not dependent on fee awards and it receives donations to support its litigation. But again, this court, in Sierra Club v. Congy Holdings, specifically rejected that argument and said it does not make out a special circumstance. And there, the plaintiff was Sierra Club, which has a deeper pocket than the ALDF, and the court said it doesn't matter whether they get donations, that's a collateral source. So those are the four reasons the district court gave. None of them constitute a special circumstance. Now finally, I'd like to address the argument put forth by the amicus. The amicus asserts that the Endangered Species Act does not protect captive endangered species unless they have a role to play in restocking the wild population. There is not a single court that has so held. The plain text of the statute doesn't limit it in that way. The regulations don't limit it in that way. And frankly, safeguarding the lives and health of captives does serve the conservation purpose. Mr. Gertrude, have we ever held that special circumstances are necessary? No, this court has not ever addressed that in the context of a when appropriate statute. Now this court has said in the context of a prevailing party statute that it is special circumstances and it's nearly automatic, special circumstances are rare. And we're arguing that that same standard should be applied here because we are prevailing plaintiffs and because the U.S. Supreme Court in Pennsylvania versus Delaware Valley, which was a Clean Air Act case, which is also a when appropriate standard, the U.S. Supreme Court said where the purpose of the fee shifting statute is the same, we should interpret them similarly. And that was a when appropriate statute and the Supreme Court looked at Section 1988, the Civil Rights Fee Act, and said we're going to be consistent here. And that's what the Ninth Circuit did in the St. John's Organic Farm case. And we think the reasoning there makes a lot of sense. But I would add that we would still prevail under any standard because the courts that have said that in a when appropriate statute, one has to make an affirmative showing that the lawsuit served the goals of the statute, well, we've done that here. That's implicit when a plaintiff prevails. And the goal of the statute is to aid private enforcement of the act. And what ALDF accomplished is they stopped the unlawful take of endangered species and they got a permanent injunction that prevents its recurrence. Now, just getting back very quickly to the amicus argument, I just want to explain why protecting captive endangered species does serve the conservation goals of the act, even if those animals will not be involved in a restocking program. It's because it discourages the illicit wildlife trade. Basically, if captive animals are healthy and live longer, it lowers the demand for wild sourced animals. And it's that constant replacement of these animals that have died in captivity that we're trying to guard against. Because that's where poachers come in and they start taking wild animals and smuggling them in this small zoo network, where the animals then, as soon as they're in there, you have a problem of source confusion. Because these animals often get traded, loaned, leased about, and it becomes very difficult to know where they came from. So we really want to protect captive animals, regardless of whether they're going to be involved in restocking. And I see my time is about up. I'd like to reserve my time for rebuttal if I can. Thank you very much. You may have some time for rebuttal. Next, we'll hear from Mr. Micheletti for the defendants. May it please the court, my name is Andrew Micheletti and I appear here on behalf of Special Memories Zoo, Donna Wheeler, and Gretchen Crow. Your Honors, it was difficult to explain to an elderly woman why the ALDF continued to pursue and harass her and her dying husband when they knew from the get-go that Mr. Wheeler was about to die and because of that, the zoo was going to be closing. The ALDF, in this case, Your Honors, requested their attorney's fees, or the bulk of those fees were not generated in the pursuit of an injunction against my client. The ALDF continued this litigation to pursue information to go after other small zoos. In fact, though it's not on the record, after informing the ALDF that Mr. Wheeler was going to die and that the zoo was going to close, my clients also offered the ALDF all of the injunctive relief that it requested. Judge Griesbach used the correct law. So that's not in the record? What we have is, as I understand it, is in essence a letter that the court construed as a Rule 68 offer. And Your Honor, I believe I just misspoke. It was in my brief or my affidavit in support of the brief denying the request of attorney's fees. So it was, the court didn't know about those, that offer until the request for attorney's fees was made. Did the judge rely upon it? Not in his decision, Your Honor. All right. Okay. Judge Griesbach used the correct law in reviewing this case, citing the Newman versus Piggy Park case, which stated that the prevailing party should be awarded the attorney's fees unless special circumstances exist that would render the judgment unfair. The court then went on to explain why he felt special circumstances existed. Mr. Micheletti? Yes, Your Honor. I guess we've been, how long did the litigation last in the district court before judgment was entered? I believe nine months. Okay. And so there, I mean, there was, this is not a situation in which your client immediately said, oh, you're right, we're going to stop, et cetera, right? No, that's incorrect, Your Honor. If there's a letter that was provided from me to the court upon the submission of the answer and affirmative defenses, where the ALDF was told and the court was told that Mr. Wheeler had been diagnosed with cancer, that he was going to be passing away. Um, he'd been given weeks, if not months to live and that the zoo had already started rehoming the animals. That letter also said, um, because Mr. Wheeler is dying and because of this lawsuit, my clients aren't going to defend it. That's a gross paraphrase, but that's what the letter said, Your Honor. Um, would you like me to expound on that or? No, I'm just making sure you do want us to pay attention to the letter. Yes, Your Honor. The fact of the matter is that Mr. Wheeler was the sole licensee. So in order to continue operations, either the zoo itself, Ms. Crow or Ms. Wheeler would have had to The bulk of the reasoning that Judge Riesbach gave for denying the ALDF's claims for attorney's fees was that the purpose of the litigation, uh, does not forward the purpose of the Endangered Species Act, uh, which the judge cited as being the, uh, protection of the endangered species, the, uh, the animals that are, uh, categorized under the Endangered Species Act. This may strike you as a left field question. Yes, Your Honor. The reason that child pornography can be prosecuted despite the First Amendment is because of the actual abuse of children, right? The, uh, fake child pornography is not illegal. The reason that possession exchanges anything short of production is criminal and can result in severe penalties is to discourage the demand, and thus try to discourage actual abuse of children. Um, the parallel occurred to me, at least, when we're talking about the captive animals that are Endangered Species Act. Why is, why is it not furthering or consistent with the purpose of the Endangered Species Act to ensure appropriate, uh, treatment of endangered species in captivity? Your Honor, I, I don't believe we're, we're talking about the same thing here. What I'm, what I'm discussing is the relief requested, whether the relief requested furthers the, uh, the goals of the Endangered Species Act. The goals of the protect is the protection of the animals. The relief requested in this case, Your Honor, was solely, uh, to the permanent closure of Special Memories Zoo. And re-homing of those animals somewhere else, right? Yes, Your Honor, but, but Special Memories Zoo's, zoo would be permanently closed. And, uh, if you look to the complaint, there was never any relief requested that Special Memories Zoo somehow, uh, that, that there's an injunction requiring Special Memories Zoo to come into compliance with the Endangered Species Act. It was only requested that all of the animals be re-homed and Special Memories Zoo be prohibited from, uh, possessing, uh, or displaying animals protected under the Endangered Species Act. Do you agree that plaintiff alleged and the default judgment adjudicated violations of the Act? I, I agree that default, that those allegations were met and that's the result of the, uh, the default judgment. And at least for the last generation of American law, appeals to the purposes of statutes to refuse to comply with their strict language have been met with pretty chilly responses in courts. And that sounds like what you and the case and the special circumstances here is that the purposes of the ESA were not met, uh, in particular because, uh, the special circumstance here was that the sole licensee was diagnosed with cancer before, uh, the answer was filed and he was going to die. I assume that there are that there are provisions in the law I haven't checked yet, but for the transfer of such licenses upon the death or sale of the business and so on. I, I don't know about the transfer of the license, Your Honor. My understanding is that somebody else can apply. Someone else would have had to apply. And I assume nobody expects, uh, anybody to live forever for one of these businesses to go forward. I, I would agree with that, Your Honor. Okay. Uh, while the catalyst theory, uh, may not be the appropriate standard in this action for, uh, denying, uh, attorney's fees, uh, certainly the fact that, uh, the litigation was the, the injunctive relief was unnecessary, unnecessary due to the impending death of the sole licensee, uh, should be considered when the, uh, the court reviews the, the equities of the parties. The ALDF continued to pursue discovery after knowing of Mr. Wheeler's impending death and, uh, and, uh, after injunctive relief had been offered, in order to obtain information, uh, to go after other small zoos. And, and if the court were to go out and look at the ALDF's website, uh, the endangered species that were at Specialist Zoo were, uh, distributed to two other zoos. And the ALDF is indeed going after, uh, the license of, uh, one of those two zoos. Uh, finally, Your Honor, the, the judgment obtained, uh, has a de minimis value. It's, it's a period victory. What you have here is a injunction that was granted against a zoo that was closing, uh, against a woman in her mid seventies who currently works as a part-time lunch lady. And Ms. Crow is a administrative assistant who left Special Memories Zoo with so little, she now lives in a trailer in her parents' property. There was no need for injunctive relief. The ALDF knew from the outset that, that Special Memories Zoo was closing and they continued to pursue and harass, uh, Ms. Wheeler, Mr. Wheeler, uh, in order simply to go after them. So why not, I mean, the argument on the other side is rather than file an answer, you should have filed an offer of judgment right away, right? Yes, Your Honor. And instead we've got months or years of litigation that's ensued. Understood, Your Honor. The hopes in filing the answer was that the ALDF would have been reasonable in seeing that the zoo was being closing and, uh, there wouldn't have been as great a deal of, um, attorneys fees generated as there was. Okay. Thank you very much, Mr. Micheletti. Thank you, Your Honor. Uh, rebuttal, uh, Mr. Kirkpatrick. Thank you, Your Honor. I just want to address that question about ALDF knowing from the get-go that Special Memories Zoo was going to close. I, there was no default the time of the answer. It was actually vigorously defended. There was several motions filed, a motion for a protective order so that they wouldn't have to answer some of the discovery. Uh, initial disclosures were exchanged and they filed their motion to dismiss on mootness grounds. And as I indicated before, it was dismissed, uh, it was denied seven months into the litigation. And what ALDF was trying to do was find out if these animals had really been irrevocably transferred away because it is common in these kinds of cases for the defendant to loan those animals out to one of their friends that has another small zoo in order to try to moot the case by saying we no longer have the ESA protected animals and then maybe they get them back later. The Missouri primate case is a good example of that. So that's why the litigation had to continue was to try to find out did they retain any interest? Were they going to make money off these animals even after they were off the premises? And that did not become clear until a year into the litigation at the time that they finally did default. Okay. Thanks to both counsel. The case is taken under advisement.